```
                    UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA,        )   16-CR-506-1
                                 )
       vs.                       )
                                 )
JEFFREY A. GLAZER,               )   Philadelphia, PA
                                 )   January 9, 2017
                Defendant.       )   12:10 p.m.



                    TRANSCRIPT OF PLEA HEARING
             BEFORE THE HONORABLE R. BARCLAY SURRICK
                 UNITED STAlTES DISTRICT JUDGE



APPEARANCES:

For the Government:        MARK C. GRUNDVIG, ESQUIRE
                           SONIA MITTAL, ESQUIRE
                           US Department of Justice,
                           Antitrust Division
                           450 Fifth Street, NW
                           Suite 11300
                           Washington, DC  20530




For the Defendant:         THOMAS MUELLER, ESQUIRE
                           WILMER CUTLER PICKERING
                           HALE & DORR, LLP
                           1875 Pennsylvania Avenue, NW
                           Washington, DC  20006




Audio Operator:            CHRIS KUREK




Transcribed by:            DIANA DOMAN TRANSCRIBING, LLC
                           P.O. Box 129
                           Gibbsboro, New Jersey  08026
                           Office:  (856) 435-7172
                           Fax:     (856) 435-7124
                           Email:   dianadoman@comcast.net



Proceedings recorded by electronic sound recording, transcript
produced by transcription service.
```

1                           <u>I N D E X</u>

2    <u>PLEA COLLOQUY BY THE COURT</u>:                    <u>PAGE</u>

3      By Judge Surrick                              4, 21

4

5    <u>FACTUAL BASIS</u>:                                  <u>PAGE</u>

6      By Mr. Grundvig                                 18

7      By Ms. Rue                                      18

8

9    <u>FINDINGS BY THE COURT</u>:                          <u>PAGE</u>

10     By Judge Surrick                                23

11

12   <u>BAIL CONDITIONS</u>:                               <u>PAGE</u>

13     By Judge Surrick                                23

14

15

16

17

18

19

20

21

22

23

24

25

1              (The following was heard in open Court 12:10 p.m.)

2              THE COURT:  All rise.  The United States District

3      Court for the Eastern District of Pennsylvania is now in

4      session, the Honorable R. Barclay Surrick presiding.

5              THE COURT:  Good morning.  Have a seat.

6              MR. GRUNDVIG:  Good afternoon, Your Honor.

7              MR. MUELLER:  Good afternoon, Your Honor.

8              THE COURT:  Good afternoon.  Okay, we have the case

9      of the United States vs. Jeffrey A. Glazer, it's Number 16-

10     506.  Counsel, please identify yourselves for the record.

11             MR. GRUNDVIG:  Your Honor, my name is Mark Grundvig

12     for the United States, and with me at counsel table are Sonia

13     Mittal and Joe Folio.

14             MR. MUELLER:  Good afternoon, Your Honor, Thomas

15     Mueller for the defendant, Jeffrey Glazer.

16             THE COURT:  Okay.  Counsel, we're here this

17     afternoon for the guilty plea, as I understand it, to an

18     information, is that correct?

19             MR. MUELLER:  That's correct, Your Honor.

20             THE COURT:  All right.  Mr. Grundvig, do you want to

21     bring your client forward?

22             MR. MUELLER:  Mr. Mueller.  Mr. Grundvig is for the

23     prosecution.

24             THE COURT:  All right.  Will you --

25             COURTROOM DEPUTY:  Raise your right hand, please.

 1              THE COURT:  Will you swear in the defendant, please?

 2              JEFFREY A. GLAZER, DEFENDANT, SWORN

 3              COURTROOM DEPUTY:  Can you state your full name for

 4    the Court?

 5              THE DEFENDANT:  Jeffrey A. Glazer.

 6              COURTROOM DEPUTY:  Thank you.

 7              THE COURT:  Mr. Glazer, over the next 30 minutes or

 8    so I'm going to ask you a number of questions.  These

 9    questions are for the purpose of my determining that your plea

10    is being voluntarily and intelligently entered.  Do you

11    understand that?

12              THE DEFENDANT:  Yes.

13              THE COURT:  Do you understand that you're under

14    oath?  You were just sworn, you're under oath?

15              THE DEFENDANT:  Yes, Your Honor.

16              THE COURT:  When you're under oath you have to

17    answer my questions truthfully.  Do you understand that?

18              THE DEFENDANT:  Yes.

19              THE COURT:  If you fail to answer questions

20    truthfully when you're under oath, you can be prosecuted for

21    perjury.  Do you understand that?

22              THE DEFENDANT:  Yes.

23                          EXAMINATION

24    BY THE COURT:

25    Q    Mr. Glazer, how old are you?

Glazer - By the Court                                    5

1    A    45.

2    Q    And how far did you go in school?

3    A    Graduate school.

4    Q    You have a graduate degree?

5    A    Yes, I have a law degree.

6    Q    A law degree?

7    A    Yes.

8    Q    You obviously read and write.

9    A    Yes.

10   Q    Are you under the care of a psychologist or psychiatrist

11   at the present time?

12   A    No.

13   Q    Are you on any medication?

14   A    No.

15   Q    Is there any reason at all, Mr. Glazer, why you would

16   have difficulty understanding these proceedings this

17   afternoon?

18   A    No.

19   Q    You're represented by counsel here?

20   A    I am.

21   Q    You've had a chance to discuss this matter with counsel

22   in detail?

23   A    Yes.

24   Q    Are you satisfied with the representation you're getting

25   from your attorney?

1   A     Yes.

2   Q     Are you satisfied that if you choose to go to trial in

3   this case, he could properly represent you?

4   A     Yes.

5   Q     Now, I'm told, Mr. Glazer, that you want to plead guilty

6   to two counts of an information.  You understand that you have

7   a right to have this matter presented to a Grand Jury and to

8   have an indictment returned in this matter?  Do you understand

9   that?

10  A     Yes.

11  Q     Do you understand that if you chose to have the matter

12  presented to the Grand Jury, that Grand Jury would be made up

13  of anywhere from 16 to 23 citizens from the Eastern District

14  of Pennsylvania and at least 16 of those Grand Jurors would

15  have to be satisfied that there is probable cause to believe

16  that you committed these crimes in order to return an

17  indictment?  Do you understand that?

18  A     Yes.

19  Q     You're telling me that you don't want this matter

20  presented to the Grand Jury?

21  A     That's correct.

22  Q     You want to waive presentment to the Grand Jury and plead

23  guilty here today to this -- to the information?

24  A     That's correct.

25            THE COURT:  Counsel, has there been a Waiver of

1    Grand Jury form prepared?

2              MR. GRUNDVIG:  Yes, Your Honor.  We've handed that

3    up already.

4              THE COURT:  All right.

5              Do you have that form?

6              COURTROOM DEPUTY:  Yeah, it was handed up with the

7    packet of waivers.

8    BY THE COURT:

9    Q    Okay, Mr. Glazer, I am holding in my hand that Waiver of

10   Grand Jury presentment form and it would appear that your

11   signature is on the line where your name is typed in.  Is that

12   your signature?

13   A    Yes.

14   Q    Did you discuss this with your attorney before you signed

15   it?

16   A    Yes.

17   Q    Did you understand that you were waving presentment to

18   the Grand Jury when you signed this?

19   A    Yes.

20   Q    Did you sign it of your own free will?

21   A    Yes, I did.

22   Q    Did anybody put any pressure on you to make you sign

23   this?

24   A    No.

25   Q    All right.

1          THE COURT:  We'll make the Grand Jury Waiver form a

2     part of the record.

3     BY THE COURT:

4     Q    Mr. Glazer, the information that you are pleading guilty

5     to today has two counts.  Each of those counts charges you

6     with a violation of Section 1 of the Sherman Act.  Section 1

7     of the Sherman Act provides inter alia that every contract or

8     combination or conspiracy to restrain trade is declared

9     illegal.

10          Mr. Glazer, if the Government had to prove that you

11     violated Section 1 of the Sherman Act, they would have to

12     prove the following.  They would have to prove that you

13     knowingly and intentionally entered into an agreement with

14     other individuals or entities to do an unlawful act.

15          And in this case, that unlawful act is to

16     unreasonably restrain trade or competition by allocating

17     customers, rigging bids and fixing prices, and that you

18     entered into this conspiracy and this conspiracy substantially

19     affected interstate or foreign commerce.  Do you understand

20     that that's what the Government would have to prove here?

21     A    Yes.

22     Q    Do you understand that there are two counts; Count 1

23     deals with a conspiracy to restrain trade that existed from

24     about April of 2013 to December of 2015, and that involved the

25     generic drug Doxycycline Hyclate -- I believe that's the

Glazer - By the Court                                                    9

1    pronunciation, and Count 2 deals with a conspiracy to restrain

2    trade that existed from about April of 2014 to December of

3    2015 involving the drug Glyburide?  Do you understand that?

4    A    Yes.

5    Q    Do you have any questions about the crimes that the

6    Government is charging you with and that the Government would

7    have to prove in this case?

8    A    No.

9    Q    Do you understand that a violation of Section 1 of the

10   Sherman Act is punishable by up to ten years in jail?  Do you

11   understand that?

12   A    Yes.

13   Q    Do you understand that there is a supervised release that

14   follows jail of up to three years?  Do you understand that?

15   A    Yes.

16   Q    Do you understand that if you're on supervised release

17   and you violate the terms of supervised release, you can be

18   brought back into Court and re-incarcerated for up to two

19   years?  Do you understand that?

20   A    Yes.

21   Q    Do you understand that there is a fine to be imposed for

22   violation of Section 1 and that fine is equal to the greatest

23   of $1 million or twice the gross pecuniary gain of (sic) the

24   conspirators derived from this crime; or twice the gross

25   pecuniary loss caused to the victims of the crime by the

1    conspirators?  Do you understand that?

2    A    Yes.

3    Q    Do you have any questions at all about the punishment

4    that can be imposed for this crime?

5    A    No.

6    Q    Do you understand, Mr. Glazer, that you do not have to

7    plead guilty to these charges?  Do you understand that?

8    A    Yes.

9    Q    You have an absolute constitutional right to go to trial

10   in this matter.  Do you understand that?

11   A    Yes.

12   Q    And if you chose to go to trial in this case, we would

13   schedule the case for a date certain, we would bring a panel

14   of perspective jurors into the courtroom, those jurors would

15   all be citizens from the Eastern District of Pennsylvania and

16   you could participate in the selection of the jury that would

17   hear the case.  Do you understand that?

18   A    Yes.

19   Q    Do you understand that during the jury selection process,

20   you could challenge jurors peremptorily, you get a certain

21   number of peremptory challenges that you don't have to

22   explain, you can just exercise them for your own reasons?  Do

23   you understand that?

24   A    Yes.

25   Q    You would also get challenges of perspective jurors for

1    cause.  Any juror who could not be fair and impartial in this

2    matter could be challenged and stricken.  Do you understand

3    that?

4    A    Yes.

5    Q    And do you understand that after you made your selection

6    of the jurors and after the Government did the same, 12 jurors

7    would be empaneled to hear the case?  Do you understand that?

8    A    Yes.

9    Q    Do you understand that I would instruct those 12 jurors

10   that you are presumed innocent, that the burden is upon the

11   Government to prove you guilty by evidence beyond a reasonable

12   doubt and the mere fact that you were arrested and accused of

13   a crime is not evidence against you?  Do you understand that?

14   A    Yes.

15   Q    Do you understand that if after hearing all of the

16   evidence and testimony any one of those 12 jurors had a

17   reasonable doubt as to your guilt, you could not be found

18   guilty because the verdict of a criminal jury must be

19   unanimous, all must agree?  Do you understand that?

20   A    Yes.

21   Q    Do you understand that if you chose to go to trial, you

22   would have a right to file pretrial motions, motions to

23   suppress evidence and other pretrial motions?  Do you

24   understand that?

25   A    Yes.

1    Q    Did you discuss that with your attorney?

2    A    Yes.

3    Q    Do you understand that if evidence was gained -- gathered

4    against you in violation of your constitutional rights, that

5    evidence could not be used at trial, it would be suppressed?

6    Do you understand that?

7    A    Yes.

8    Q    Do you understand that if you chose to go to trial in

9    this matter, you would have the right to confront and to

10   cross-examine all the witnesses against you?  Do you

11   understand that?

12   A    Yes.

13   Q    You have a right to present your own witnesses and if you

14   subpoenaed witnesses, we would require that they appear.  Do

15   you understand that?

16   A    Yes.

17   Q    Do you understand that you do not have to testify at

18   trial, you have a constitutional right to remain silent and if

19   you choose to exercise that right, it cannot be held against

20   you in any way?  Do you understand that?

21   A    Yes.

22   Q    Do you understand that if you went to trial and you were

23   convicted, you would have a right to appeal and we would give

24   you an attorney free of charge to file that appeal if you

25   couldn't afford one?  Do you understand that?

1   A    Yes.

2   Q    In that appeal, you could raise objections to anything

3   that happened during the course of the trial that you felt was

4   improper or inappropriate.  Do you understand that?

5   A    Yes.

6   Q    And you could also raise objection to my rulings on those

7   pretrial motions that I mentioned a few minutes ago.  Do you

8   understand that?

9   A    Yes.

10  Q    Mr. Glazer, you're telling me you do not want to go

11  through that process, you do not want to go to trial in this

12  matter?  Is that what you're telling me?

13  A    Yes.

14  Q    You want to admit your guilt here this afternoon and take

15  the consequences, is that what you're telling me?

16  A    Yes.

17  Q    Do you understand that if I accept this plea, I am simply

18  going to order a presentence investigation and schedule the

19  matter down for sentencing?  Do you understand that?

20  A    Yes.

21  Q    You and your attorney will get a copy of that presentence

22  report and you can make objections to it at the time of

23  sentencing.  Do you understand that?

24  A    Yes.

25  Q    Mr. Glazer, you entered into a plea agreement with the

Glazer - By the Court                          14

1    Government, is that correct?

2    A    Yes.

3    Q    I'm holding that agreement in my hand and it is a 17 page

4    document and on the 17th page there's a place for your

5    signature.  Is that your signature?

6    A    Yes.

7    Q    Mr. Glazer, did you read this document before you signed

8    it?

9    A    Yes.

10   Q    Did you go over it with your attorney before you signed

11   it?

12   A    Yes.

13   Q    Did you understand each and every paragraph of it before

14   you signed it?

15   A    Yes.

16   Q    Did you sign it of your own free will?

17   A    Yes.

18   Q    Did anybody pressure you to make you sign it?

19   A    No.

20   Q    Did anybody promise you anything in return for signing

21   it?

22   A    No.

23   Q    Mr. Glazer, there are some provisions in that plea

24   agreement that I want to talk to you about.  First of all, the

25   plea agreement provides for a waiver of appeal rights and a

1   waiver of collaterally attacking your conviction.  Do you

2   understand that?

3   A    Yes.

4   Q    You discussed this with your attorney?

5   A    Yes.

6   Q    Do you understand that you are severely limiting your

7   appeal rights by entering this plea agreement?

8   A    Yes.

9   Q    Under this plea agreement, the only thing that you could

10  raise on appeal would be if I sentenced you beyond the

11  statutory maximum, you could raise that objection.  Do you

12  understand that?

13  A    Yes.

14  Q    If I upwardly departed from the Sentencing Guidelines

15  unreasonably or improperly, you could object to that.  Do you

16  understand that?

17  A    Yes.

18  Q    You can also object that you did not receive effective

19  assistance of counsel in these proceedings.  Do you understand

20  that?

21  A    Yes.

22  Q    You're telling me that you're satisfied with the

23  representation you've gotten here?

24  A    Yes.

25  Q    You're satisfied that your attorney has effectively

1    represented you?

2    A    Yes.

3    Q    Any question in your mind about that?

4    A    No.

5    Q    There's another provision in this plea agreement

6    regarding a downward departure under Section 5K1.1 of the

7    guidelines.  That provision provides that in return for your

8    cooperation in this matter, the Government may come in at the

9    time of sentencing and request that I depart downward from the

10   Sentencing Guidelines.  Do you understand that?

11   A    Yes.

12   Q    Do you understand that it is solely within the discretion

13   of the Government whether they will come in here and make such

14   a request?  Do you understand that?

15   A    Yes.

16   Q    Do you understand that it is solely within my discretion

17   whether I will grant that request and the extent to which I

18   will grant it?  Do you understand that?

19   A    Yes.

20   Q    The plea agreement also has recommendation in it with

21   regard to those Sentencing Guidelines.  Do you understand that

22   those recommendations are simply that -- recommendations,

23   they're not binding on the Court?  Do you understand that?

24   A    Yes.

25   Q    It's up to the Court to determine at the time of

1    sentencing what the Sentencing Guidelines are and what is a

2    reasonable sentence under the circumstances.  Do you

3    understand that?

4    A    Yes.

5    Q    With regard to those guidelines, have you had discussion

6    with your attorney about those guidelines?

7    A    Yes.

8    Q    Do you understand that those guidelines are advisory,

9    they're not mandatory, but I do have to consider them when I'm

10   imposing sentence?  Do you understand that?

11   A    Yes.

12   Q    Mr. Glazer, again I ask you, are you entering this plea

13   of your own free will?

14   A    Yes.

15   Q    Has anybody put any pressure on you at all to make you do

16   this?

17   A    No.

18   Q    Has anybody promised you anything at all?

19   A    No.

20   Q    Do you know what you're doing?

21   A    Yes.

22   Q    Do you have any questions about what you're doing?

23   A    No.

24   Q    Do you understand that if you have questions, now is the

25   time to ask them, not later?

1    A    Yes, I understand.

2              THE COURT:  Counsel, you have been representing Mr.

3    Glazer in this matter.  You've had an opportunity to discuss

4    this matter with him in detail?

5              MR. MUELLER:  Yes, I have, Your Honor.

6              THE COURT:  Are you satisfied that he's entering a

7    voluntary, intelligent plea here?

8              MR. MUELLER:  I am.

9              THE COURT:  Any question in your mind about that?

10             MR. MUELLER:  None whatsoever.

11             THE COURT:  Counsel, do you want to give me the

12   factual basis for these charges?

13             MR. GRUNDVIG:  Yes, Your Honor.  Had this case gone

14   to trial the United States would have presented evidence

15   sufficient to prove the following facts.  During the periods

16   relevant to Counts 1 and 2, the defendant was the Chief

17   Executive Officer and Chairman of a pharmaceutical company,

18   organized and existing under the laws of Delaware with its

19   principal place of business in Eatontown, New Jersey.

20             During the relevant periods the defendant's company

21   was engaged in the acquisition, licensing, production,

22   marketing, sale and distribution of generic pharmaceuticals

23   products including Doxycycline Hyclate and Glyburide and was

24   engaged in the sale of those drugs in the United States.

25             Doxycycline Hyclate is a generic antibiotic used to

Grundvig - Factual Basis                                          19

treat a variety of infections and Glyburide is a generic drug used in the treatment of diabetes.  During the relevant periods, the defendant's company produced and distributed Doxycycline Hyclate in a delayed release tablet form in three dosage strengths.  It produced and distributed Glyburide in tablet form in four dosage strengths.

During the relevant periods the parties agree that the affected volume of commerce based on the sales of Doxycycline Hyclate and Glyburide in the United States totaled approximately 1.6 million after excluding certain sales pursuant to United States Sentencing Guidelines Section 1B1.8.

The relevant period for Count 1 is that period from in or about April, 2013 and continuing at least until at least December, 2015.

During the relevant period, the defendant participated in a conspiracy with other persons and entities engaged in the production and sale of generic pharmaceutical products including Doxycycline Hyclate, the primary purpose of which was to allocate customers, rig bids and fix and maintain prices of Doxycycline Hyclate sold in the United States in furtherance of the conspiracy.

Defendant and his co-conspirators, including individuals that the defendant supervised at his company and those he reported to at his company's parent, engaged in discussions and attended meetings with the co-conspirators

1   involved in the production and sale of Doxycycline Hyclate.

2   During such discussions and meetings, agreements were reached

3   to allocate customers, rig bids and fix and maintain the

4   prices of Doxycycline Hyclate sold in the United States.

5           The relevant period for Count 2 is that period from

6   in or about April, 2014 and continuing until at least

7   December, 2015.  During the relevant period for Count 2, the

8   defendant participated in a conspiracy with other persons

9   engaged in the -- and entities engaged in the production and

10  sale of generic pharmaceutical products including Glyburide,

11  the primary purpose of which was to allocate customers and fix

12  and maintain prices of Glyburide sold in the United States.

13          In furtherance of the conspiracy the defendant and

14  his co-conspirators at his company, including individuals the

15  defendant supervised, engaged in discussions and attended

16  meetings with co-conspirators involved in the production and

17  sale of Glyburide.

18          During such discussions and meetings agreements were

19  reached to allocate customers and fix and maintain prices of

20  Glyburide sold in the United States.  The defendant was an

21  organizer or leader in the conspiracy which involved at least

22  five participants.

23          During the relevant periods for Counts 1 and 2,

24  Doxycycline Hyclate and Glyburide sold by one or more of the

25  conspirator firms and the equipment and supplies necessary to

Plea Colloquy by the Court                                     21

1    the production and sale of those drugs as well as payments for

2    those drugs traveled in interstate and foreign commerce.

3          The business activities of the defendant and his

4    company and co-conspirators in connection with the production

5    and sale of Doxycycline Hyclate and Glyburide that were the

6    subject of these conspiracies were within the flow of and

7    substantially affected interstate and foreign trading

8    commerce.

9          Acts in furtherance of the conspiracies described in

10   Count 1 and Count 2 were carried out within the Eastern

11   District of Pennsylvania.

12         Doxycycline Hyclate, the subject of -- described in

13   Count 1 of the charges and Glyburide, the subject of the

14   conspiracy in Count 2, were sold by one or more conspirators

15   to customers in this district.

16         In addition to conspiratorial meetings and

17   discussions described took place in the United States and

18   elsewhere, and at least one of these discussions relevant to

19   Count 2 involved a co-conspirator that has its principal place

20   of business in this district.

21   BY THE COURT:

22   Q    All right, Mr. Glazer, you heard what the Assistant

23   United States Attorney just said with regard to the facts of

24   this case?

25   A    Yes.

1   Q     And those facts are included in the plea memorandum that

2   was prepared by the Government.  Do you remember reading that?

3   A     Yes.

4   Q     Do you understand you are admitting the facts that were

5   just recited and that are included in that plea memorandum?

6   A     Yes.

7   Q     Do you admit those facts?

8   A     Yes, I do.

9   Q     Do you understand that if you did the things you've just

10  admitted, you're in fact guilty of these charges?

11  A     Yes.

12  Q     Mr. Glazer, a couple more things.  When I bring you back

13  here to impose sentence on you, if I impose a sentence of

14  incarceration it will be a flat sentence of incarceration,

15  there is no parole in the Federal system.  Do you understand

16  that?

17  A     Yes.

18  Q     Do you understand that a few minutes ago you told me that

19  you are an attorney, you were licensed as an attorney?

20  A     Yes.

21  Q     Do you understand that this conviction may very well

22  adversely impact your ability to practice law?

23  A     Yes.

24          THE COURT:  Counsel, anything further?

25          MR. MUELLER:  No, Your Honor.

Plea Colloquy by the Court                                    23

1          THE COURT:  Anything further from the Government?

2          MR. GRUNDVIG:  Nothing, Your Honor.

3          THE COURT:  I find that this plea is voluntarily and

4     intelligently entered.  I find that there is a factual basis

5     for it and I will accept it.

6          Will you please take the plea?

7          COURTROOM DEPUTY:  Jeffrey Glazer, you are charged

8     in Information Number 16-506 consisting of Counts 1 and 2

9     charging you with conspiracy to fix prices in violation of

10    Title 15 of the United States Code, Section 1.  How do you

11    plead, guilty or not guilty?

12         THE DEFENDANT:  Guilty.

13         COURTROOM DEPUTY:  Thank you.

14         THE COURT:  All right, and I'm going to order that

15    presentence investigation report that I mentioned a few

16    minutes ago.  We're going to schedule this matter for

17    sentencing on April 10, 2017 at 10:00 a.m.

18         Now I understand that the defendant -- that Pretrial

19    Services has done an investigation and determined that the

20    defendant should be released pending sentencing on $300,000

21    ROR bail.  I'm going to accept that recommendation.

22         During the course of his release the defendant shall

23    report to the Pretrial Services as directed.  You shall

24    surrender a passport, you shall surrender any firearms and you

25    shall have no contact with any co-defendants or potential

1     witnesses subject to the discussion with counsel.  Do you

2     understand that?

3               THE DEFENDANT:  Yes.

4               THE COURT:  Anything further?

5               MR. MUELLER:  No, Your Honor.

6               MR. GRUNDVIG:  Nothing, Your Honor.

7               THE COURT:  All right, we'll recess.

8               COURTROOM DEPUTY:  All rise.

9               (Proceedings concluded, 10:42 a.m.)

10                            * * *

11

12

13               **C E R T I F I C A T I O N**

14

15          I, Diane Gallagher, court approved transcriber,

16     certify that the foregoing is a correct transcript from the

17     official electronic sound recording of the proceedings in the

18     above-entitled matter.

19

20

21      /s/Diane Gallagher              January 10, 2017

22     _____        _____

23     DIANE GALLAGHER                 DATE

24     DIANA DOMAN TRANSCRIBING, LLC

25